# Chicago & Alton Railway Company v. Christopher Pronsekevitch.

## Gen. No. 4,815.

VERDICT—*when not excessive.* A verdict for $4,500 in an action for personal injuries which has been reduced by *remittitur* to $3,500 is not excessive where it appears that the plaintiff's nose was broken and permanently twisted to one side, causing a lasting dis-

figurement, and where it also appeared that certain bones of the head were broken from which he suffered much pain.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907.

O'DONNELL & DONOVAN, for appellant; WINSTON, PAYNE & STRAWN, of counsel.

DONOHOE, MCNAUGHTON & MCKEOWN, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

On June 2, 1903, between four and five o'clock in the afternoon, appellee and four other persons were riding south in a covered buggy with the curtains down, in the rain, on a highway near the limits of the village of Gardner, at a point where the two main tracks of the Chicago & Alton Railway cross the highway in a northeasterly and southwesterly direction. The westernmost track is the south-bound, and the easternmost the north-bound. As appellee drove upon the north-bound track, the vehicle was struck by an engine running backward, drawing fourteen flat cars and a caboose. The horses were killed, the carriage demolished, and the persons riding thrown in different directions. Christopher Pronsekevitch, the appellee, was seriously injured, and brought this suit in the Circuit Court of Will county against the Chicago & Alton Railway Company to recover damages for such injuries.

The first count of the declaration charged carelessness, negligence and improper conduct in running the train, as did the fourth. The second count charged failure to give the statutory signals, sounding the whistle or ringing the bell. The third and fifth charged that box cars were permitted to stand on a certain "Y" track which obstructed the view of appellee, subjecting

him to unnecessary hazard and danger. There was a plea of not guilty. Appellee had a verdict for $4,500 of which the court required him to remit $1,000. A judgment for $3,500 was entered and this appeal was taken.

Appellee's testimony was to the effect that there were from five to eight box cars southwest, and several northeast of this crossing, leaving an opening sufficient for two buggies to pass. The cars southwest of the roadway came to within eight feet of the wheel track. Most of the witnesses on this subject were disinterested, and there is a clear preponderance of evidence on this point in favor of appellee. Appellee and the other people in the carriage were strangers in Gardner. Appellant had there its agent and employes. Many people were at the scene of the accident within a few minutes. If there had been no such box cars standing in the highway and southwest along the "Y" track, the railway company could easily have obtained many witnesses to that fact. We are of the opinion that the jury were justified in finding that these obstructions existed. If they did exist, then the view of appellee as he drove up to this crossing was obstructed until his team had passed through between the box cars and he could see down the track from the place where he sat. After he crossed the "Y" there were other obstructions to his view of the track to the southwest, a tower house, oil house, telegraph poles. When he had gone that far, he was in a place of peril near the track with a strange team and with a ditch to the northeast close to the highway and parallel with it, between the "Y" and the Alton tracks. When appellee found himself in this sudden position of danger, in a strange place, with a strange team, and saw the engine approaching, he was not required to act with that deliberation which would have been expected of him under ordinary circumstances, and it was for the jury to say whether he was guilty of negligence in undertaking to cross the track ahead of

the engine. In this connection it is also to be noted that a passenger train was almost due from the north, and that appellee, who lived at a village on this railway north of this place, would naturally be looking in that direction for the coming of that train, which would be on the track nearest to him, and which did come very soon after the accident. We therefore conclude that, irrespective of whether a bell was rung or whistle sounded, the jury were warranted in finding for the plaintiff under the third and fifth counts. There is positive testimony that the bell was not rung. There is evidence of the trainmen that it was rung. The cross-examination of some of these witnesses seems to indicate that their testimony is based more on the practice and custom than upon any recollection of what did occur at that time. The fireman seems to testify that the bell was ringing automatically and also that he was ringing it by hand, both of which statements can hardly be true.

Katy Casper was riding on the back seat, and Crain, one of the trainmen, testified that almost immediately after the accident, she made certain statements to the effect that she saw the train and tried to stop appellee from driving across, but that he was drunk and did not know what he was doing, and said, "Oh, we can get across all right." At the time this was said, appellee had been struck and was unconscious, and it may well be doubted whether this testimony as to what Katy Casper said was competent. An attempt was made to prove by one Walter, a brakeman of appellant, what she said to him, and the court said he would sustain an objection thereto at that time. It did not then appear just when Walter heard Katy Casper talking, and no offer was ever made of what it was he heard her say, so that we do not know that it could have been competent; but other evidence showed that she, immediately after the accident, picked up her satchel or bundle and went to a farm house, and before Walter's examination was concluded, it appeared that

he did not talk with her at that time, but afterward. It is manifest that, under no rule of law, could her conversation, after she had been to the farm house and after the victims of the disaster had been taken away, be competent evidence against appellee. She could have been called by appellant to testify that appellee was drunk, if such was the fact. There was much evidence from different witnesses, many of them disinterested, tending to show that appellee did not appear to be under the influence of liquor, though he had had some beer in the morning.

At the trial the upper portion of appellee's body was exhibited to the jury. Appellant's counsel asked that their physicians be permitted to examine the body, to which counsel for appellee consented if it be done in the presence of the jury. Appellant's counsel asked leave to take him to some other room or place for examination, but to this appellee's counsel would not consent and the court did not require it. In this we conclude the court did not err, as appellee, having offered his body in evidence, was subject to an examination under such conditions as the court in its discretion might deem reasonable. We do not consider the refusal of the court to require appellee to submit to an examination by physicians of appellant in some place away from the jury unreasonable. Had an examination been permitted as requested by appellant, the results would have borne only on the amount of damages.

Appellee testified in chief as to his earnings as a coal miner before the injury and since. Appellant then called the assistant bookkeeper of the mining company by which appellee was employed, and proved that when he went back to work after getting out of the hospital he earned as much as before. It is urged that the court erred in then permitting appellee, in rebuttal, to testify that while he drew as much wages after the accident as before, he had to give a portion of these wages to his buddy or partner who worked

in the same room with him in the mine, because he was not able to do as much work as his buddy, who required him to divide with him his half of the earnings of the room. The order in which evidence shall be introduced is in a measure in the discretion of the trial court, and in addition this seems to us proper rebuttal testimony. If it were true that, while he received from the coal company as much money as before, yet he received it under an arrangement which required him to pay part of it to his buddy, because he himself was not able to do as heavy work as his buddy, on account of this accident, we think it was proper to be shown.

Appellee's nose was broken and permanently twisted to one side, causing a lasting disfigurement. Certain bones of his head were broken, so that he suffered much pain, and in our judgment the damages awarded are not excessive.

The objections to the instructions do not seem to us to be well taken. Each of those complained of has been approved by the Supreme Court, and the objections urged to them are technical and subtle. We think appellant has no reason to complain that, by the instructions taken together, the law affecting this case was not declared fairly and favorably to it.

The judgment of the Circuit Court is affirmed.

*Affirmed.*